**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:22-cr-00044-APM** |
| **v.** | : | |
| | : | |
| **CODY VOLLAN,** | : | |
| | : | |
| **Defendant** | : | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter.  For the reasons set forth herein, the government requests that this Court sentence Defendant Cody Vollan to 14 days of incarceration, 36 months of probation, 60 hours of community service, and $500 in restitution.

**I.      Introduction**

Defendant Cody Vollan participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than $2.7 million  in losses.[1]

Defendant Vollan pleaded guilty to one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G).  As explained herein, a sentence including 14 days of incarceration is appropriate in this case because

---

[1] As of April 5, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $2,734,783.15.  That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

Vollan: (1) stood on the Upper West Plaza among other rioters who were battling with police as they tried to protect the Capitol from the mob, (2) entered the Capitol by climbing through a broken window shortly after the initial breach, (3) walked throughout the building for more than 15 minutes, including in the vicinity of Speaker Pelosi's suite and trips through the Crypt and the Rotunda, and (4) took photos with his cell phone inside the building but deleted them before they could be used as evidence against him or other rioters.

The Court also must consider that Vollan's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers and disrupt the proceedings. *See United States v. Thomas Fee*, 1:21-cr-00131 (JDB), Tr. 04/01/2022 at 17 ("The defendant was an active participant in a mob assault on our core democratic values and our cherished institution.  And that assault was intended by many and by the mob at large in general to interfere with an important democratic processes of this country.  I cannot ignore that, cannot pull this misdemeanor out of that context.") (statement of Judge Bates).  Vollan's actions and those of his fellow rioters enabled the breach of the Capitol, threatened the lives of the police officers, legislators, and their staffs, and disrupted the certification vote for several hours.  *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers.  The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). Here, the facts of and circumstances of Vollan's crime support a sentence of 14 days of incarceration, 36 months of probation, 60 hours of community service, and $500 in restitution.

## II.      Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol.  *See* ECF 36 (Statement of Offense), at ¶¶ 1-7.  As this Court knows, a riot cannot occur without rioters, and each rioter's actions—from the most mundane to the most violent—contributed, directly and indirectly, to the violence and destruction of that day.  With that backdrop we turn to Vollan's conduct and behavior on January 6.

### *Defendant Vollan's Role in the January 6, 2021 Attack on the Capitol*

About a week before the January 6 riot, Vollan's co-defendant, Jeremiah Carollo, texted Vollan and co-defendant Anthony Carollo to ask if they wanted to attend former President Trump's rally on January 6.  They agreed on a plan to do so.  On January 5, 2021, Vollan and Anthony Carollo drove Vollan's car from their home near Chicago to the Baltimore/Washington International Airport, where they picked up Jeremiah Carollo.  The three men spent the night in a hotel in Washington, D.C., and the next morning took an Uber to former President Trump's rally.

After the rally, the three men followed the crowd to the Capitol.  They entered the Capitol grounds from the west and made their way to the Upper West Plaza, in an area where other rioters were skirmishing with police officers.  This image shows Vollan and his co-defendants on their approach:



The following screenshot is from a video showing the three men (Vollan on the left, wearing a plaid shrit) near the area on the Upper West Plaza where police were attempting to keep rioters from advancing on the Capitol:



The video is Exhibit 1 to this memorandum.  In the video, co-defendant Jeremiah Carollo (in the gray hood and tan jacket) can be heard saying what sounds like, "Let's totally do it."  The men then made their way to the Capitol building, and entered through a broken window adjacent to the Senate Wing Door around 2:22 p.m.  *See* ECF 36 at ¶ 8.  The following images are taken from surveillance video recorded inside the Capitol as Vollan entered with his co-defendants:





The three men walked together throughout the Capitol for more than 15 minutes, including in the vicinity of Speaker Pelosi's suite and trips through the Crypt and the Rotunda.  *Id.*  The following image shows them walking through the Rotunda:



The following image shows them walking through Statuary Hall:



They exited the building via the Memorial Door around 2:38 p.m.  *Id.*  Capitol surveillance video shows them leaving the grounds about 20 minutes later:



*Defendant's Interview*

On October 28, 2021, Vollan agreed to speak to FBI agents about his actions on January 6. He admitted entering the Capitol building through a broken window with his co-defendants, Anthony and Jeremiah Carollo. He said they went up a flight of stairs and he saw several men use a metal post to smash a wooden plaque bearing the words "Speaker of the House." Vollan told agents that the men who smashed the plaque took the shards with them. He estimated that he and his co-defendants left the building after 15 minutes. When shown photos taken on January 6 in the Capitol building and on the grounds, Vollan identified himself and his co-defendants. He also told agents he took photos with his cell phone inside the building but that he deleted them.

*The Charges and Plea Agreement*

On January 14, 2022, the United States charged Vollan by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1) & (2) and 40 U.S.C. §§ 5104(e)(2)(D) & (G). On January 19, 2022, law enforcement officers arrested him at his home in Illinois. On February 7, 2022, the United States charged him by information with the same offenses charged in the complaint and, on April 21, 2022, he pleaded guilty, pursuant to a written plea agreement, to Count Four of a Superseding Information charging him with Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). As part of the plea agreement, Vollan agreed to pay $500 in restitution to the Architect of the Capitol.

## III.    Statutory Penalties

Vollan now faces sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, he faces up to six months of imprisonment and a fine of up to $5,000. He also must pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C.

9

Cir. 2008).  Because this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it.  18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence.  Some of those factors include:  the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  § 3553(a)(6).  In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of 14 days of incarceration, 36 months of probation, 60 hours of community service, and $500 in restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the United States Capitol on January 6, 2021, defies hyperbole.  It was a criminal offense unlike any other in American history, in that it was a direct assault not only on our government, but on our *system* of government:  it was an attack on democracy itself.  Hostile combatants breached and then stormed the halls and chambers of Congress with the sole purpose of reversing, by force, a United States Presidential election.  Using violence and intimidation, the mob of rioters sought to override and invalidate the votes of millions of Americans.  To put it plainly, the events of January 6 may be distilled as follows:  the rioters beat and injured police officers and destroyed doors and obliterated windows to infiltrate our seat of government because they wanted to force Congress to cancel the certification of the Presidential election and install the

loser of that election as the winner.  By its very nature, the attack eludes comparison to other events.

Although each defendant must be sentenced based on his own conduct, this Court should consider that each person who entered the Capitol on January 6 without authorization did so under extreme circumstances.  As they entered the Capitol, they very likely crossed through numerous barriers and barricades and heard the violent outcries and roar of a mob.  Depending on the timing and location of their approach, they also may have observed extensive fighting between the rioters and police and smelled chemical irritants in the air.  No rioter was a mere tourist that day.  In fact, Exhibit 1 shows Vollan and his co-defendants standing in the midst of fighting between other rioters and police on the Upper West Plaza.

Additionally, while assessing Vollan's individual conduct and fashioning a just sentence, this Court should look to a number of critical aggravating and mitigating factors, including: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) defendant's reaction to acts of violence or destruction; (5) whether, during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from police officers; and (9) whether the defendant demonstrated sincere remorse or contrition. Although these factors are neither exhaustive nor dispositive, they help to place each defendant on a spectrum as to his fair and just punishment. If Vollan personally had engaged in violence or destruction, he would be facing additional charges and/or penalties associated with that conduct.  The absence of violent or destructive acts by Vollan therefore is not a mitigating factor in this misdemeanor case.

As Exhibit 1 shows, Vollan could not have mistaken the events of January 6 at the Capitol as anything other than a riot.  Despite what was happening around him on the Upper West Plaza, he followed the crowd of other rioters to the Capitol building, and he entered it by climbing through a window that had been smashed to pieces just over ten minutes earlier.  Shards of broken glass littered the floor as he began his 15-minute march through the Capitol.  Although he took photographs to document his experience, he destroyed them before they could be used as evidence against him or other rioters.  To his credit, Vollan gave an apparently truthful interview to FBI agents several months before his arrest, and he accepted responsibility and indicated a desire to plead guilty almost immediately after his arrest, even before receiving discovery from the government.   The government is not aware of any social media posts by Vollan regarding the riot. In light of the nature and the circumstances of Vollan's offense, a sentence including 14 days of incarceration is appropriate in this matter.

### B.  The History and Characteristics of Vollan

Vollan has no criminal history.  He has an associate degree from a junior college and a steady history of employment.  He has been compliant with his conditions of pretrial release and has expressed remorse for committing this offense.  He spoke truthfully to FBI agents about his involvement in the offense several months before his arrest, and he sought to plead guilty almost immediately upon his arrest.  To the government's knowledge, he did not boast about his participation in the riot nor did he glorify it on social media.  Vollan's history and characteristics— both before and after his participation in the riot—factor significantly in the government's recommendation of a sentence including 14 days of incarceration rather than a longer term.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law.  "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[2]  As with the nature and circumstances of the offense, this factor supports a sentence of incarceration.  *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation.  I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant.  18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

---

[2] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have:  the peaceful transfer of power to a newly elected President.  As noted by Judge Moss during sentencing in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed.  When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble.  The damage that [Defendant] and others caused that day goes way beyond the several-hour delay in the certification.  It is a damage that will persist in this country for decades.

Tr. at 69-70.  Indeed, the attack on the Capitol means "that it will be harder today than it was [before the riot] for the United States and our diplomats to convince other nations to pursue democracy.  It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation."  *Id.* at 70.

The gravity of these offenses demands deterrence.  This was not a protest.  *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss).  And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences.  There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Vollan's conduct demonstrates that a sentence of incarceration is necessary to deter him from committing future offenses.  By climbing through a broken window after observing police locked in battle with other rioters, he clearly demonstrated his disregard for the law and his willingness to participate in the insurrection.  His sentence must be sufficient to deter him from similar criminal activity in the future.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[3]  This Court must sentence Vollan based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct:  his participation in the January 6 riot. Although those like Vollan convicted of misdemeanors are generally less culpable than defendants convicted of felonies, misdemeanor breaches of the Capitol on January 6, 2021, were not minor crimes.  A probationary sentence should not be the default.[4]  *See United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19 ("I don't want to create the impression that probation is the automatic outcome here because it's not going to be.") (statement of Judge Lamberth at sentencing).  Accord, *United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 (statement of Judge Friedman).

Vollan has pleaded guilty to Count Four of the Superseding Information charging him with Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C.

---

[3] Attached to this sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants.  That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

[4] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC).  The government is abiding by its agreements in those cases, but has made no such agreement in this case.  *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

§ 5104(e)(2)(G).  This offense is a Class B misdemeanor.  18 U.S.C. § 3559.  Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9.  The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(6), do apply, however.

Although hundreds of defendants participated in the Capitol breach on January 6, 2021, many salient differences explain the differing sentences recommended and imposed thus far. Avoiding unwarranted disparities requires the courts to consider not only a defendant's "record" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement.  *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of co-defendant who, unlike defendant, pleaded guilty and cooperated with the government).

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009); s*ee id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").  Because the Sentencing Guidelines do not apply here, the court cannot readily conduct a disparity analysis against a nationwide sample of cases captured by the Sentencing Guidelines.

Even in Guidelines cases, sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity.  *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007).  The Capitol breach was *sui generis*:  a mass crime with significant distinguishing features, including the historic assault on the seat of the legislative

branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against police officers, and the large number of victims. Thus, even though many defendants were not charged as conspirators or as co-defendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence. Although no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide comparisons to some of the relevant sentencing considerations in this case.

For example, in the case of *United States v. Jennifer Heinl*, No. 1:21-cr-370 (EGS), the defendant pleaded guilty to the same charge as Vollan. Like Vollan, Heinl witnessed clashes between rioters and police before she entered the Capitol. Heinl entered the building around the same time as Vollan, but she used the Senate Wing Door whereas Vollan climbed through a broken window adjacent to that door. Heinl spent about 47 minutes in the Capitol, compared to about 15 for Vollan. Unlike Vollan, Heinl made false statements to the FBI in her initial interview and showed a lack of remorse in a later interview. Vollan, however, deleted evidence of his and others' crimes from his phone. Heinl received a sentence including 14 days of incarceration and two years of probation.

An additional useful comparator is *United States v. Jeremy Ryan Sorvisto*, No. 21-CR-320 (ABJ), another case in which the defendant pleaded guilty to the same charge as Vollan. Sorvisto entered the building around the same time as Vollan, via the Senate Wing Door adjacent to the broken window through which Vollan entered. Sorvisto spent about 25 minutes in the Capitol, compared to Vollan's 15. Unlike Vollan, Sorvisto boasted (mildly) about his conduct on social media and via text messaging. He also directed another to delete incriminating photos of him,

whereas Vollan handled that task himself.  Sorvisto was sentenced to 30 days of incarceration with no period of probation.

As these cases show, there are infinite combinations of aggravating and mitigating sentencing factors among Capitol Riot defendants—especially because "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661.  In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge."  *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012).  The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender."  *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008).  "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095.

## V.  This Court's Authority to Impose a Sentence of Up to 14 Days of Imprisonment and Probation.

This Court has the authority under 18 U.S.C. § 3561(a)(3) to impose a "split sentence," i.e., a sentence requiring both a term of imprisonment and a term of probation, on a defendant who has been convicted of a "petty offense."  *See, e.g.*, *United States v. Little*, No. 21-cr-315 (RCL), 2022 WL 768685, at *1 (D.D.C. Mar. 14, 2022) (concluding that " a split sentence is permissible under law and warranted by the circumstances of this case"); *United States v. Sarko*, No. 21-cr-

591 (CKK), 2022 WL 1288435, at *1 (D.D.C. Apr. 29, 2022) (explaining why a split sentence is permissible in a petty offense case); *United States v. Caplinger*, No. 21-cr-0342 (PLF), 2022 WL 2045373, at *1 (D.D.C. June 7, 2022) ("the Court concludes that a split sentence is permissible for a petty offense and therefore is an option for the Court in Mr. Caplinger's case."); *United States v. Smith*, No. 21-cr-290 (RBW), ECF 43 (D.D.C. Mar. 15, 2022) (imposing split sentence); *United States v. Meteer*, No. 21-cr-630 (CJN), ECF 37 (D.D.C. April 22, 2022) (imposing split sentence); *United States v. Entrekin*, No. 21-cr-686 (FYP), ECF 34 (D.D.C. May 6, 2022) (imposing split sentence); *United States v. Revlett*, No. 21-cr-281 (JEB), ECF 46 (D.D.C. July 7, 2022) (imposing split sentence); *United States v. Getsinger*, No. 21-cr-607 (EGS), ECF 60 (D.D.C. July 12, 2022) (imposing split sentences); *United States v. Ticas*, No. 21-cr-00601 (JDB), ECF 40 (D.D.C. July 15, 2022).[5]  But this Court need not decide that question in this case because there is no dispute that such a defendant can be required to "remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling no more than the lesser of one year or the term of imprisonment authorized for the offense, during the first year of the term of probation or supervised release."  18 U.S.C. § 3563(b)(10).  Congress enacted this provision to give sentencing courts "flexibility" to impose incarceration imprisonment as a condition of probation in one of two ways.  S. Rep. No. 225, 1983 WL 25404, at *98.  First, a court can direct that a defendant be confined in "split intervals" over weekends or at night.  *Id.*  Second, a sentencing court can impose "a brief period of confinement" such as "for a week or two."  *Id.*

---

[5] In *United States v. Lindsey*, No. 21-cr-162 (BAH), ECF 102, the defendant pleaded guilty to three counts: 18 U.S.C. § 1752(a)(1); 40 U.S.C. §§ 5104(e)(2)(D) and 5104(e)(2)(G).  Chief Judge Howell sentenced Lindsey to five months incarceration on each of the § 5104 counts, to be served concurrently, and 36 months' probation on the § 1752(a)(1) count.

Although the statute does not define an "interval of time," case law suggests that it should amount to a "brief period" of no more than a "week or two" at a time.  *See United States v. Mize*, No. 97-40059, 1998 WL 160862, at *2 (D. Kan. Mar. 18, 1998) (quoting Section 3563(b)(10)'s legislative history in interpreting the term to mean a "brief period of confinement, *e.g.*, for a week or two, during a work or school vacation," described above and reversing magistrate's sentence that included 30-day period of confinement as a period condition of probation); *accord United States v. Baca*, No. 11-1, 2011 WL 1045104, at *2 (C.D. Cal. Mar. 18, 2011) (concluding that two 45-day periods of continuous incarceration as a condition of probation was inconsistent with Section 3563(b)(10)); *see also United States v. Anderson*, 787 F. Supp. 537, 538 (D. Md. 1992) (continuous 60-day incarceration not appropriate as a condition of probation).  A 14-day term of imprisonment is therefore permissible under Section 3563(b)(10).  S*ee United States v. Stenz*, No. 21-cr-456 (BAH), ECF 38 (D.D.C. Feb. 17, 2022) (imposing imprisonment under Section 3563(b)(10); *United States v. Schornak*, No. 21-cr-278 (BAH), ECF 71 (D.D.C. Feb. 18. 2022) (same); *United States v. Herendeen*, No. 21-cr-278 (BAH), ECF 87 (D.D.C. Apr. 1, 2022) (same); *United States v. McCreary*, No. 21-cr-125 (BAH), ECF 46 (D.D.C. Apr. 1, 2022) (same); *United States v. Reed*, No. 21-cr-204 (BAH), ECF 178 (D.D.C. Apr. 14, 2022) (same); *United States v. Watrous*, No. 21-cr-627 (BAH), ECF 40 (D.D.C. Apr. 21, 2022) (same); *United States v. Vuksanaj*, No. 21-cr-620 (BAH), ECF 43 (D.D.C. Apr. 29, 2022) (same); *United States v. Heinl*, No. 21-cr-370 (EGS), ECF 43 (D.D.C. June 8, 2022), ECF 43 (same).

No court appears to have decided whether a term of continuous imprisonment greater than two weeks but less than 30 days is consistent with Section 3563(b)(10), and the government does not advocate such a sentence here.  Practical concerns with multiple short terms of intermittent confinement (i.e., nights and weekends in jail), which would require repeated entries and

departures from a detention facility during the COVID-19 pandemic, thereby increasing the risk of spreading contagion in the facility, may militate against imposing that type of "intermittent" confinement.  For that reason, any 14-day term of imprisonment imposed as a condition of probation under Section 3563(b)(10) should be ordered to be served without interruption.

## VI.      Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors.  Balancing these factors, the government recommends that this Court sentence Vollan to 14 days of incarceration, 36 months of probation, 60 hours of community service, and $500 in restitution.  Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Vollan's liberty as a consequence of his behavior, while recognizing his early acceptance of responsibility for his crime.

<div style="margin-left:40%">

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:      s/ *Joseph DeGaetano*
         Joseph DeGaetano
         TN Bar No. 021448
         Assistant United States Attorney
         District of Columbia
         Capitol Riot Detailee
         555 4th Street, NW,
         Washington, D.C. 20530
         Telephone No. (423) 385-1345
         Joseph.Degaetano@usdoj.gov

</div>

## <u>CERTIFICATE OF SERVICE</u>

On this 1st day of September, 2022, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

<div align="right">

s/ <i>Joseph DeGaetano</i>
Joseph DeGaetano
Assistant United States Attorney

</div>